No. 23-2248

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

Kristin Worth, et al.,

Appellees,

vs.

Bob Jacobson, in his individual capacity and in his official capacity as
Commissioner of the Minnesota Department of Public Safety,

Appellant.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

_____

**APPELLANT'S REPLY BRIEF**

_____

COOPER & KIRK, PLLC

David H. Thompson
Atty. Reg. No. 17-0143
Peter A. Patterson
Atty. Reg. No. 17-0144
William V. Bergstrom
Atty. Reg. No. 23-0238
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600

OFFICE OF THE ATTORNEY
GENERAL
State of Minnesota

LIZ KRAMER
Solicitor General
Atty. Reg. No. 0325089

AMANDA PRUTZMAN
Assistant Attorney General
Atty. Reg. No. 0389267

Attorneys for Appellees
Kristin Worth, Austin Dye, Axel
Anderson, Minnesota Gun Owners
Caucus, Second Amendment
Foundation, and Firearms Policy
Coalition, Inc.

*Attorneys for Appellees*
*Kristin Worth, Austin Dye, Axel*
*Anderson, Minnesota Gun Owners*
*Caucus, Second Amendment*
*Foundation, and Firearms Policy*
*Coalition, Inc.*

445 Minnesota Street, Suite 1400
St. Paul, MN  55101-2131
Telephone: (651) 757-1217

*Attorneys for Appellant Bob Jacobson,*
*Commissioner of the Minnesota*
*Department of Public Safety*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT ....................................................................................... 1

I.   APPELLEES IGNORE THEIR SUMMARY JUDGMENT BURDEN. ............................ 1

    A.    Appellees Bore the Burden to Produce Facts Establishing their Proposed Conduct falls Under the Plain Text of the Second Amendment. ....................................................................... 2

    B.    Summary Judgment Requires Inferences Based on Proven Facts ........ 4

    C.    Appellees Submitted No Facts and Failed to Meet their Burden .......... 4

II.  APPELLANTS FAILED TO CREATE A GENUINE ISSUE OF MATERIAL FACT THAT 18-TO-20-YEAR-OLDS ARE WITHIN "THE PEOPLE" IN THE PLAIN TEXT OF THE SECOND AMENDMENT. ................................................................ 6

    A.    Historical Facts are Required to Prove *Bruen*'s First Prong. ............... 7

        1.    Other Circuits consider history in *Bruen*'s first prong. ............. 9

        2.    Minors' common law status is the only historical fact in the record ................................................................................ 11

    B.    Appellees Presented No Facts Supporting the Meaning of "the People" and their Textual Arguments Fail. ........................................ 13

        1.    "The people" cannot mean everyone without limitation. ......... 13

        2.    The prefatory clause does not conflict with age-restrictions. ................................................................................ 14

        3.    Categorical exclusions may be based upon dangerousness ...... 17

III. RECONSTRUCTION ERA STATUTES SHOULD NOT BE IGNORED. ...................... 18

    A.    The Reconstruction Era is Relevant to the Analysis of a State Law. ............................................................................................. 19

Appellate Case: 23-2248     Page: 3     Date Filed: 09/06/2023 Entry ID: 5313574

    B.    Reconstruction Era Analogues are Not Legitimately
        Distinguishable. ................................................................................. 22

    C.    More Nuanced Analogical Analysis Requires Consideration of
        Reconstruction Era Statutes. .......................................................... 25

IV.   SOVEREIGN IMMUNITY MAY BE RAISED AT ANY TIME. ................................. 26

CONCLUSION ............................................................................................... 27

ii

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Amerind Risk Mgmt. Corp. v. Malaterre*
633 F.3d 680 (8th Cir. 2011)................................................................. 26

*Atkinson v. Garland*
70 F.4th 1018 (7th Cir. 2023) ........................................................... 5, 9

*Brown v. Entertainment Merchants Ass'n*
564 U.S. 786 (2011) ........................................................................... 13

*Calderon v. Ashmus*
523 U.S. 740 (1998) ........................................................................... 26

*Der v. Connolly*
666 F.3d 1120 (8th Cir. 2012).............................................................. 3

*Edelman v. Jordan*
415 U.S. 651 (1974) ........................................................................... 26

*Evenwel v. Abbott*
578 U.S. 54 (2016) ............................................................................. 10

*Ezell v. City of Chicago*
651 F.3d 684 (7th Cir. 2011)......................................................... 20, 21

*Ford Motor Co. v. Dep't of Treasury of Ind.*
323 U.S. 459 (1945) ........................................................................... 27

*Glasgow v. Nebraska*
819 F.3d 436 (8th Cir. 2016).............................................................. 26

*Gould v. Morgan*
907 F.3d 659 (1st Cir. 2018) ............................................................. 20

iii

Appellate Case: 23-2248     Page: 5     Date Filed: 09/06/2023 Entry ID: 5313574

*Harmon Indus., Inc. v. Browner*
   191 F.3d 894 (8th Cir. 1999).................................................................. 26

*District of Columbia v. Heller*
   554 U.S. 570 (2008)..................................................................... 11, 17, 21

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*
   5 F.4th 407 (4th Cir. 2021) .................................................................... 7

*Jones v. Bonta*
   34 F.4th 704 (9th Cir. 2022) .................................................................. 7

*Kanter v. Barr*
   919 F.3d 437 (7th Cir. 2019).................................................................. 10

*Kennedy v. Bremerton Sch. Dist.*
   142 S. Ct. 2407 (2022) ........................................................................... 2

*McDonald v. City of Chicago*
   561 U.S. 742 (2010) .............................................................................. 19

*Md. Shall Issue, Inc. v. Montgomery Cnty.*
   2023 WL 4373260 (D. Md. July 6, 2023)........................................... 20

*Metge v. Baehler*
   762 F.2d 621 (8th Cir. 1985)................................................................... 4

*N.L.R.B. v. Noel Canning*
   573 U.S. 513 (2014) .............................................................................. 10

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &
   Explosives*
   700 F.3d 185 (5th Cir. 2012)........................................................... 14, 22

*Nat'l Rifle Ass'n v. Bondi*
   61 F.4th 1317 (11th Cir. 2023) ........................................................ 9, 20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
   142 S. Ct. 2111 (2022) ..................................................................Passim

Appellate Case: 23-2248   Page: 6   Date Filed: 09/06/2023 Entry ID: 5313574

*Oregon Firearms Fed'n v. Kotek Oregon All. for Gun Safety*
   2023 WL 4541027 (D. Or. July 14, 2023) .................................................... 3, 5, 25

*Pennhurst St. Sch. & Hosp. v. Halderman*
   465 U.S. 89 (1984) .................................................................................. 26

*Perpich v. Dep't of Def.*
   496 U.S. 334 (1990) ................................................................................ 15

*Range v. Att'y Gen. United States*
   53 F.4th 262 (3d Cir. 2022) ..................................................................... 6, 10

*Range v. Att'y Gen. United States*
   69 F.4th 96 (3d Cir. 2023) ....................................................................... 7, 9

*Sanborn Sav. Bank v. Freed*
   38 F.4th 672 (8th Cir. 2022) ..................................................................... 8

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*
   393 U.S. 503 (1969) ................................................................................ 13

*Tyler v. Hennepin Cnty*
   598 U.S. 631 (2023) ................................................................................ 10

*United States v. Greeno*
   679 F.3d 510 (6th Cir. 2012) ..................................................................... 21

*United States v. Jackson*
   69 F.4th 495 (8th Cir. 2023) ..................................................................... 9, 18, 22

*United States v. Portillo-Munoz*
   643 F.3d 437 (5th Cir. 2011) ..................................................................... 13

*United States v. Rahimi*
   61 F.4th 443 (5th Cir.) .............................................................................. 9

*United States v. Rene E.*
   583 F.3d 8 (1st Cir. 2009) ........................................................................ 14

Appellate Case: 23-2248   Page: 7   Date Filed: 09/06/2023 Entry ID: 5313574

*United States v. Sitladeen*
  64 F.4th 978 (8th Cir. 2023) ........................................................ 6, 10, 19

*Vernonia Sch. Dist. 47 J v. Acton*
  515 U.S. 646 (1995) ............................................................................ 13

*Wisconsin v. City of New York*
  517 U.S. 1 (1996) ............................................................................... 10

**STATE CASES**

*State v. Callicutt*
  69 Tenn. 714 (1878) ...................................................................... 17, 21

**FEDERAL STATUTES**

42 U.S.C. § 1983 ................................................................................ 2, 3

Appellate Case: 23-2248    Page: 8    Date Filed: 09/06/2023 Entry ID: 5313574

**ARGUMENT**

At its core, this case may be disposed of upon garden-variety principles of summary judgment. *Bruen* commands that history informs the text of the Second Amendment. Appellees bore the burden on *Bruen*'s first, textual prong but failed to submit historical evidence to create a genuine issue of material fact, solely relying on logical leaps from militia statutes. Appellees argue the Court should look to history only when it benefits them and ignore it when it does not. They urge the Court to pay no attention to the unrebutted record fact that at the founding, 18-to-20-year-olds were dependent constitutional actors and argue what matters for determining the meaning of "the people" is their status as adults *today*.

With no sense of irony, Appellees then argue only the founding era's regulations are relevant to analogical reasoning in *Bruen*'s second prong, and the consensus of reconstruction era state laws must be ignored. But, the more nuanced analogical analysis required due to drastic societal and technological changes establishes an American tradition of age-restrictions consistent with Minnesota's statute.

**I.    APPELLEES IGNORE THEIR SUMMARY JUDGMENT BURDEN.**

*Bruen* sharpened the focus in Second Amendment analysis to the understandings of the people at ratification. History is a now fact issue. Appellees take issue with the Commissioner's facts and the inferences to be drawn from them,

1

yet, Appellees conducted no discovery, did not submit an expert report, and failed to submit any facts in the record. As the Commissioner was the only party who produced *any* facts from which inferences could have been drawn, the district court erred in not entering summary judgment for the Commissioner.

### A. Appellees Bore the Burden to Produce Facts Establishing their Proposed Conduct falls Under the Plain Text of the Second Amendment.

Appellees argue they bore no burden at all on their constitutional challenge. R. Doc. 77, at 2-3. It was Appellees' burden to show their proposed conduct falls under the plain text of the Second Amendment both because that is the usual burden for plaintiffs seeking to declare a statute unconstitutional and because *Bruen* makes clear it is their burden.

A burden-shifting framework wherein Appellees bear the initial burden of establishing their proposed conduct is covered by the Second Amendment before the burden shifts to the government to establish a historical analogue is consistent with First and Fourth Amendment cases brought under 42 U.S.C. § 1983. In a case decided the same session as *Bruen*, the Court said a First Amendment "plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise and Free Speech Clauses. If the plaintiff carries these burdens, the focus then shifts to the defendant …." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022). For Fourth Amendment claims, plaintiffs bear the burden because "plaintiffs

Appellate Case: 23-2248    Page: 10    Date Filed: 09/06/2023 Entry ID: 5313574

ordinarily retain the burden of proof throughout the trial" in a suit "brought pursuant to 42 U.S.C. § 1983." *Der v. Connolly*, 666 F.3d 1120, 1128 (8th Cir. 2012) ("[W]e agree with the majority of our sister circuits' 'formulation of the proper allocation of the parties' burdens in a section 1983 action alleging a Fourth Amendment violation.'")

*Bruen*'s language echoes this burden. At least one court post-*Bruen* found the plaintiff bears the burden on the textual prong: "First, a plaintiff challenging a firearm regulation must show the plain text of the Second Amendment covers the conduct regulated by the challenged law." *Oregon Firearms Fed'n v. Kotek Oregon All. for Gun Safety*, No. 2:22-CV-01815-IM, 2023 WL 4541027, at *5 (D. Or. July 14, 2023). The language of *Bruen* indicates burden shifting:

> The Supreme Court explicitly states that "when the Second Amendment's plain text covers an individual's conduct ... the government *must then* justify its regulation ...." *Bruen*, 142 S. Ct. at 2129–30 (emphasis added). This Supreme Court language strongly suggests that the burden shifts to the government only after the plaintiffs have shown that the challenged conduct is covered by the plain text of the Second Amendment.

*Id.* at *5, n.6. It is consistent with the language of *Bruen* and the burden-shifting framework in other constitutional claims that Appellees bear the initial burden of proving their proposed conduct falls within the plain language of the Second Amendment.

3

## B. Summary Judgment Requires Inferences Based on Proven Facts.

To survive summary judgment, a party must do more than merely create a suspicion. Although direct proof is not required, "the facts and circumstances relied upon must attain the dignity of substantial evidence and not be such as merely to create a suspicion…Furthermore, an inference which a jury is entitled to draw must be based upon proven facts and not upon other inferences." *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985). Summary judgment principles are not less true in cases of great importance. !

## C. Appellees Submitted No Facts and Failed to Meet their Burden.

Appellees failed to meet their burden on *Bruen*'s first step of proving that the Constitution's plain text covers 18-to-20-year-olds freely carrying guns in public for self-defense. They failed to submit a genuine issue of material fact because they conducted no discovery and submitted no expert reports. Minnesota's valid exercise of police power should not be disposed of without such a showing.

> The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies. That "legal inquiry is a refined subset" of a broader "historical inquiry," and it relies on "various evidentiary principles and default rules" to resolve uncertainties. … Courts are thus entitled to decide a case based on the historical record compiled by the parties.

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 n.6 (2022). This case involved disputed issues of historical fact. Namely, whether 18-to-20-year-olds were within the understanding of "the people" in the Second Amendment when

4

ratified. "Only a professional historian would know how to evaluate often-conflicting claims about the social, cultural, and legal landscape of an earlier period, and that person likely would not jump to any conclusions without devoting significant time to an evaluation of original sources." *Atkinson v. Garland*, 70 F.4th 1018, 1028–29 (7th Cir. 2023); *see Kotek*, 2023 WL 4541027, at *5 (involving testimony of multiple historians regarding historical record).

Appellees cite to no historical facts in their brief, relying only on the plain language of the Amendment (which fails for the reasons below) and militia statutes. Appellees' Br. at 9-16. Appellees ask the Court to infer that because some statutes required men 18 to 45 to have arms for required militia service, then all 18-to-20-year-olds had the right to freely carry guns in public for self-defense. Appellees submitted no facts from which this inference could be drawn.

In contrast, the Commissioner submitted an expert report by a constitutional historian which established that 18-to-20-year-olds were minors, dependent constitutional actors, and lacked legal autonomy. App. 56, 62-67; R. Doc. 50-1, at 4, 10-15. The Commissioner's uncontradicted evidence established that 18-to-20-year-olds did not have an unfettered right to carry guns in public absent consent of their guardians or structure of the militia. App. 62-66, 84-85; R. Doc. 50-1, at 10-14, 32-33. Appellees submitted no facts to rebut the conclusions drawn by the Commissioner's historian. No reasonable inference for Appellees can be drawn from

5

this uncontroverted evidence (the only historical evidence in the record) and the district court erred in granting summary judgment for Appellees.

## II. APPELLANTS FAILED TO CREATE A GENUINE ISSUE OF MATERIAL FACT THAT 18-TO-20-YEAR-OLDS ARE WITHIN "THE PEOPLE" IN THE PLAIN TEXT OF THE SECOND AMENDMENT.

As *Bruen* did not decide who constitutes "the people," historical facts are required to prove its meaning encompassed 18-to-20-year-olds at ratification. Appellees presented no facts on this issue and their textual arguments fail.

*Bruen*'s "holding decides *nothing* about *who* may lawfully possess a firearm. … Nor have we disturbed anything that we said in *Heller* or *McDonald ...* about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (emphasis added and citation omitted). It is startling Appellees claim the issue is decided when this Court said, "*Bruen* does not address the meaning of 'the people,'" *United States v. Sitladeen*, 64 F.4th 978, 984 (8th Cir. 2023).

*Bruen* is factually dissimilar from this case and does not compel a finding of unconstitutionality. Appellees incorrectly state "[t]he only feature that differentiates this case from *Bruen* is Plaintiffs' age." Appellees' Br. at 9. But the challenged statute in *Bruen* was conduct-based, i.e. the "special need" to obtain a license to carry a handgun in public, 142 S. Ct. at 2122–24, and Minnesota's age-restriction is status-based, i.e. the applicant's age. *See Range v. Att'y Gen. United States*, 53 F.4th

6

262, 271 (3d Cir. 2022) *vacated on reh'g en banc Range v. Att'y Gen. United States*, 69 F.4th 96 (3d Cir. 2023). This case should be analyzed as other status-based challenges have been, with reference to historical facts to inform the meaning of the text.

There is no historical evidence whatsoever to support the inference Appellees urge this Court to make nor good law which compels it. The entirety of Appellees' textual argument depends upon a logical leap from militia statutes and two vacated cases, *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 5 F.4th 407 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) and *Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), *vacated on reh'g and remanded*, 47 F.4th 1124 (9th Cir. 2022) (Mem.).

## A. Historical Facts are Required to Prove *Bruen*'s First Prong.

Historical facts must be considered to determine the meaning of "the people." Four other circuits have considered history in determining *Bruen*'s first prong, this Circuit is in accord, and ambiguous language in the Constitution is generally determined this way. The only facts in the record as to the historical meaning of "the people" are the Commissioner's, regarding minors' common law status.

The meaning of the Constitution's plain text "is fixed according to the understandings of those who ratified it." *Bruen*, 142 S. Ct. at 2118; *see also id.* at 2132 (referring to "the Second Amendment's historically fixed meaning.") What the

7

ratifiers understood "the people" to mean requires consideration of historical facts. Yet, for the first time, Appellees argue that *any and all* historical evidence must be limited solely to step two of *Bruen*'s test because the modern definition of "adult" suits them better. Appellees' Br. at 18 (arguing "once history is invoked, the law is *presumed unconstitutional* and can only be saved if the State manages to prove the regulation is consistent with historical limitations on the right"). Appellees' novel argument is too late as arguments not made below are waived. *Sanborn Sav. Bank v. Freed*, 38 F.4th 672, 679 (8th Cir. 2022).

This argument is not only novel, but wrong. *Bruen* says history informs the meaning of the constitutional text. "[R]eliance on *history to inform the meaning of constitutional text*—especially text meant to codify a pre-existing right—is, in our view, more legitimate, and more administrable, than asking judges to 'make difficult empirical judgments' about 'the costs and benefits of firearms restrictions,' especially given their 'lack [of] expertise' in the field." *Bruen*, 142 S. Ct. at 2130 (emphasis added and deleted). To the Commissioner's knowledge to-date, no post-*Bruen* decision supports Appellees' argument. Indeed, they cited none.

Appellate Case: 23-2248    Page: 16    Date Filed: 09/06/2023 Entry ID: 5313574

## 1. Other Circuits consider history in *Bruen*'s first prong.

Four other circuits have considered history in analyzing the text of the Amendment post-*Bruen*.[1] *See Range*, 69 F.4th at 102 (conducting historical analysis including common law to determine if non-violent felons are part of "the people"); *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1321 (11th Cir. 2023), *reh'g en banc granted, vacated*, 72 F.4th 1346 (11th Cir. 2023) ("First, we consider the plain text of the Amendment, as informed by the historical tradition. Second, we look for a historical analogue… *Bruen* therefore brings historical sources to bear on both inquires."); *United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023) (finding "from the record before us" the challenger "did not fall into any such group" "that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated"); *Atkinson v. Garland*, 70 F.4th 1018, 1022–23, 1025 (7th Cir. 2023) (remanding for historical facts and analysis in order to determine if "the plain text of the Second Amendment does not cover felons").

This Circuit's precedent is in accord. "History shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people." *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023).

---

[1] Although, after considering history, the Circuits have reached differing conclusions about who is included in "the people," indicating the meaning of the text is far from settled.

This Court confirmed an analysis "about what is meant by the phrase, 'the people'" is the correct approach rather than "constru[ing] the phrase broadly at the outset of the analysis and then consider[ing] whether history and tradition support the government's authority to impose the regulation." *Sitladeen*, 64 F.4th at 987 (*citing Kanter v. Barr*, 919 F.3d 437, 452-53 (7th Cir. 2019) (Barrett, J., dissenting)).

Further, ambiguous language in the Constitution is generally determined with reference to history. *See Tyler v. Hennepin Cnty*, 598 U.S. 631, 638 (2023) ("The Takings Clause does not itself define property. *...* So we also look to … historical practice …"); *Evenwel v. Abbott*, 578 U.S. 54, 73-74 (2016) (considering "constitutional history" and "settled practice."); *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 524 (2014) ("*[I]n interpreting the Clause, we put significant weight upon historical practice.*") (emphasis in original); *Wisconsin v. City of New York*, 517 U.S. 1, 21 (1996) (looking to the "importance of "historical practice").

The textual inquiry therefore requires reference to history, and the language of *Heller* and *Bruen* supports the Commissioner's historical evidence that 18-to-20-year-olds were not within "the people." *See Range*, 53 F.4th at 271 ("The language of *Bruen* provides three insights into pertinent limits on "the people" whom the Second Amendment protects."). Although not at issue at all, *Bruen* noted petitioners were "two ordinary, law-abiding, *adult* citizens" that are "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134 (emphasis added), *see*

Appellate Case: 23-2248     Page: 18     Date Filed: 09/06/2023 Entry ID: 5313574

*also id.* at 2125. The Court went out of its way to twice mention petitioners were "adults," a descriptor that did not apply to 18-to-20-year-olds when the Amendment was ratified. Concurring, Justice Alito said *Bruen* "does not expand the categories of people who may lawfully possess a gun," while specifically noting the age-restrictions in current federal law. *Id.* at 2157–58 (Alito, J. concurring). Justice Alito further underscored the holding's applicability to "adults" when rebutting the dissent's discussion of guns being the leading cause of death in adolescents (a category to which, at least, 18 and 19-year-olds belong[2]). *Heller* also provides insight into the boundaries of the Amendment, declaring "the right of law-abiding, *responsible* citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) (emphasis added). The scope of the Amendment is limited to responsible, i.e. not dangerous, groups.

### 2. Minors' common law status is the only historical fact in the record.

It is undisputed that the common law of the relevant time may inform the meaning of a constitutional right. Appellees' Br. at 33. Although Appellees disagree with the inferences to be drawn from the common law, they have not produced contrary evidence. The common laws "were modified and improved from age to age, by changes in the habits of thought and action among the people, by modifications

---

[2] World Health Organization, *Adolescent Health*, (September 3, 2023) https://www.who.int/health-topics/adolescent-health#tab=tab_1lth (who.int).

Appellate Case: 23-2248      Page: 19      Date Filed: 09/06/2023 Entry ID: 5313574

in the civil and political state, by the vicissitudes of public affairs, by judicial decisions, and by statutes." Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 8 (Boston, Little, Brown, & Co. 1868). If the common law (and indeed the habits of thought and action among the people) of the founding era provided that minors under 21 had no rights except for necessities and existed entirely under parental authority then it was unnecessary for legislatures to legislate that minors could also not freely carry guns in public. App. 62-64; R. Doc. 50-1, at 10-12. That minors could not freely carry their guns in public for their self-defense during the founding era is clear from the many militia laws which required parents, guardians, or masters to obtain arms for their minor charges which would have been superfluous and unnecessary if minors had such a right. *See* Add. at 51-52; Brewer Amicus Br. at 9-14.

Appellees misunderstand the Commissioner's argument regarding common law parental authority over minors under 21. The point is not that founding era parental authority should be converted into state authority today (Appellees' Br. at 37), the point is that minors under 21 did not *at any time* have the personal freedom to carry guns in public for self-defense. This is not only an unrebutted record fact in this case (App. 63, 66, 84-85; R. Doc. 50-1, at 11, 14, 32-33) but is confirmed by Justice Thomas' dissent in *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786

12

(2011). *See also Vernonia Sch. Dist. 47 J v. Acton*, 515 U.S. 646, 654 (1995) ("Traditionally at commonlaw, and still today, unemancipated minors lack some of the most fundamental rights of self-determination—including even the right of liberty in its narrow sense, *i.e.*, the right to come and go at will. They are subject, even as to their physical freedom, to the control of their parents or guardians.") No historical record facts establish that when the Second Amendment was ratified people 18-to-20-years old had the right to freely carry guns in public for self-defense.

## B. Appellees Presented No Facts Supporting the Meaning of "the People" and their Textual Arguments Fail.

Appellees' textual arguments fail for three reasons. First, "the people" cannot mean all Americans without limitation. Second, the Amendment's prefatory clause does not conflict with age-restrictions. Third, categorical restrictions based on dangerousness are permissible.

### 1. "The people" cannot mean everyone without limitation.

There is no end to Appellees' argument that "the people" includes all ages. It would be absurd to interpret "the people" as including all ages, for example, 5-year-olds should not have Second Amendment rights. The fact that young people have rights under the First and Fourth Amendments is irrelevant because the purpose of the amendments differ. While the Second Amendment is an affirmative right, the First and Fourth Amendments are protective rights. *United States v. Portillo-Munoz*, 643 F.3d 437, 441 (5th Cir. 2011); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,

13

393 U.S. 503, 513, (1969). Protecting young people from the state is not the same as arming children.

A ruling that people 18-to-20-years-old have Second Amendment rights based on inferences drawn from militia statutes opens the door to future claims that *all* ages have the right to freely carry in public for self-defense. Nothing in Appellees' current argument precludes such a claim as they have previously relied upon militia statutes setting minimum ages of 15 or 16. R. Doc. 42, at 12; R. Doc. 77, at 6, n.1. Because minors did not come into political or constitutional personhood until they reached the age of majority at 21 (App. 64; R. Doc. 50-1, at 12) there is no historical distinction between 20-year-olds, 15-year-olds, and even 5-year-olds. "[B]ecause the line between childhood and adulthood was historically 21, not 18, the First Circuit's conclusion that there is a 'longstanding tradition' of preventing persons under 18 from 'receiving' handguns applies with just as much force to persons under 21." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives* ("*BATFE*") 700 F.3d 185, 204 (5th Cir. 2012), *abrogated by Bruen*, 142 S. Ct. 2111, (citing *United States v. Rene E.,* 583 F.3d 8, 13–16 (1st Cir. 2009)).

### 2. The prefatory clause does not conflict with age-restrictions.

Appellees assert their maximally inclusive reading of "the people" is bolstered by the Amendment's prefatory clause's reference to "the militia." Appellees' Br. at 11-16. In essence, they argue because 18-to-20-year-olds were in the militia, that

14

establishes they are also within "the people." *Id*. But Appellees entirely fail to address how it is possible that 18-to-20-year-olds had full Second Amendment rights when the record facts establish that in the founding era people under 21 were under total parental authority and did not have full constitutional rights. App. 56, 62-64; R. Doc. 50-1, at 4, 10-12. There is *no* record evidence that founding era 18-to-20-year-olds had the right to freely wield guns in public for self-defense outside of militia order or parental consent.

Although the Militia Act of 1792 provided "every able-bodied male citizen between the ages of 18 and 45 be enrolled therein [in the militia] and equip himself with appropriate weaponry," *Perpich v. Dep't of Def.*, 496 U.S. 334, 341 (1990), this is not a command to be armed in one's personal life outside of militia service. Appellees fail to address why state militia laws treated males under 21 differently than males over 21 if all ages had the right to freely carry a gun in public for self-defense. For example, why would the people of Delaware enact a law providing "[E]very apprentice, or other person of *the age of eighteen and under twenty-one years* … shall by his parent or guardian respectively be provided with a musket or firelock" if people under 21 years could purchase and had the right to carry their own firearm? §§ 7–8, 1785 Del. Laws 59; Add. at 51 (emphasis added). Similarly, why would New Hampshire provide that only males "not under the control of Parents, Masters, or Guardians" (i.e., people over 21) must "equip himself and be

15

constantly provided with a good Fire Arm" if people under 21 had full Second Amendment rights? 1776 Acts & Laws of the Colony of N.H. 36, 39 (1776); Add. at 51. Appellees wholly fail to address why at least eight state legislatures between the years 1776 and 1825 (some more than once) required adults to provide weapons for minors under 21 if minors *actually* had the unfettered right to acquire and bear arms in public for self- defense. *See* Add. at 51-52. There is no reason these states would treat people under 21 any differently except for the unrebutted historical fact that people under 21 had no independent legal status.

That age-restrictions do not conflict with the Second Amendment is evident from legal treatises of the times. While Thomas Cooley said, "the people, from whom the militia must be taken, shall have the right to keep and bear arms,"[3] he also said that "the State may prohibit the sale of arms to minors." Cooley, *Constitutional Limitations supra*, at 739 n.4. While Appellees attempt to diminish this statement by referring to its location within the police powers section of the treatise, Cooley describes the State's police powers as relating to and affecting rights of the people:

> The authority to establish, for the intercourse of the several members of the body politic with each other, those rules of good conduct and good neighborhood which are calculated to prevent a conflict of rights and to

---

[3] Appellees' Br. at 16 *citing* Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America* 270 (1880). Appellees place great weight upon Cooley's 1880 treatise while simultaneously arguing laws from 1857 through 1893 are too late in time to be considered for analogical reasoning and only laws from around 1791 will do. *See* Appellees' Br. at 41.

16

insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a corresponding enjoyment by others, is usually spoken of as the authority or power of police.

*Id.* at 227. The states' police powers were understood to relate to individual rights. Indeed, Cooley cited *State v. Callicutt*, 69 Tenn. 714 (1878), to support his statement that "[i]t would be quite impossible to enumerate all the instances in which the police power is or may be exercised, because the various cases in which the exercise by one individual of his rights may conflict with a similar exercise by others, or may be detrimental to the public order or safety, are infinite in number and in variety." *Id.* 738–39. And, in *Heller* the Court noted, "All other post-Civil War 19th-century sources we have found concurred with Cooley." 554 U.S. at 618. Cooley acknowledged Appellees' argument and *still* cited age-restrictions as a valid exercise of the states' police powers for public safety which did not conflict with the Second Amendment.

### 3. Categorical exclusions may be based upon dangerousness.

It is undisputed that historically states had the power to issue categorical restrictions based upon a group's presumption of dangerousness or irresponsibility with guns. Appellant's Br. at 29. It is the ability to legislate on this basis that is relevant. The fact that dangerousness has been used in the past as a pretext for prejudice does not mean it can never be legitimately used.

17

Appellees attempt to deflect from the states' historical power to the historically excluded groups themselves arguing that because the exclusions are objectively offensive today, the historic laws should be ignored. Appellees' Br. at 18-19. But the Eighth Circuit already concluded these historical categorical restrictions have value. "While some of these categorical prohibitions of course would be impermissible today under other constitutional provisions, they are relevant here in determining the historical understanding of the right to keep and bear arms." *Jackson*, 69 F.4th at 503. Further, while the historical exclusions would be unconstitutional today because they were based on suspect classes, age is not a suspect class.

Because Appellees failed to create a genuine issue of material fact that the people included 18-to-20-year-olds, this Court must reverse the district court on the first prong.

### III.  RECONSTRUCTION ERA STATUTES SHOULD NOT BE IGNORED.

The Commissioner met his burden on *Bruen*'s second prong by identifying numerous historical analogues establishing an American tradition of age-restrictions like Minnesota's statute. Reconstruction era analogues must be considered for three reasons. First, they are relevant to the analysis of a state law. Second, they are not legitimately distinguishable. Third, both dramatic technological advances and unprecedented social concerns require a more nuanced approach to the analysis.

18

## A. The Reconstruction Era is Relevant to the Analysis of a State Law.

America has a historical tradition of limiting guns in the hands of people under 21. *Bruen* does not require analysis of only founding era laws. Noting the debate about which time period applies, *Bruen* did "not address this issue" because for its purposes the public understanding of the right was the same in both eras. 142 S. Ct. at 2138. By side-stepping the issue, the Court signaled both time periods could be applicable, especially where the public understanding of the right was the same in both time periods. Here, the public understanding of the right was also the same in both periods: at no time did 18-to-20-year-olds have an unfettered, independent right to freely carry guns in public for self-defense.

Eighth Circuit precedent does not foreclose consideration of reconstruction era laws. *See* Appellees' Br. at 25-26. This Court said "[b]ecause '[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*,' regulations in effect at or near the time of the Second Amendment's ratification carry *more weight* in the analysis than those that existed long before or after that period." *Sitladeen*, 64 F.4th at 985 (emphasis added). But at issue in *Sitladeen* was a federal prohibition. Consideration of a state law requires greater consideration of analogues around the time the Fourteenth Amendment was enacted because that is when the Second Amendment was made applicable to the states. *See McDonald v. City of Chicago*, 561 U.S. 742, 770–79 (2010).

19

Other courts have concluded the reconstruction era is applicable to analysis of a state law. Post-*Bruen*, the Third Circuit and the District of Maryland determined the reconstruction era is crucial to determining the constitutionality of a state law. *See Bondi*, 61 F.4th at 1323; *Md. Shall Issue, Inc. v. Montgomery Cnty.*, No. 8:21-cv-01736, 2023 WL 4373260, at *8 (D. Md. July 6, 2023) (concluding "historical sources from the time period of the ratification of the Fourteenth Amendment are equally if not more probative of the scope of the Second Amendment's right to bear arms as applied to the states by the Fourteenth Amendment"), *appeal docketed*, No. 23-1719 (4th Cir. July 10, 2023).

Prior to *Bruen*, several circuits likewise concluded that for consideration of a state law the time around ratification of the Fourteenth Amendment controls.[4] *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018) ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)."); *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) ("*McDonald* confirms that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth

---

[4] These circuits conducted historical analysis consistent with *Bruen* and are still good law on these points. "Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127.

Appellate Case: 23-2248     Page: 28     Date Filed: 09/06/2023 Entry ID: 5313574

Amendment was proposed and ratified."); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (following *Ezell*).

A focus on founding era law to the exclusion of reconstruction era law risks supplanting our modern-day bias for the understandings of earlier Americans. The reconstruction era laws cited by the Commissioner were not challenged as unconstitutional, save one, which was found to be constitutional. *See State v. Callicutt*, 69 Tenn. 714 (1878). The absence of challenges is not because of claimed feeble judicial systems because there *are* cases challenging convictions under these laws, just not *constitutional* challenges. *See* Appellant's Br. at 49-50. The absence of constitutional challenges reflects a public understanding that age-restrictions did not conflict with the Second Amendment. Just as laws *rejected* on constitutional grounds are probative evidence of unconstitutionality, laws *upheld* on constitutional grounds must be probative of constitutionality. *See Bruen* 142 S. Ct. at 2131. These laws are all longstanding and therefore presumptively constitutional.[5] *Id.* at 2162 (Kavanaugh, J. concurring); *Heller*, 554 U.S. at 626. Ignoring the combined weight of these historical age-restrictions undermines *Bruen*'s direction that the "traditions of the American people" control rather than judicial balancing. *Bruen*, 142 S. Ct. at 2131.

---

[5] Appellees attempt to minimize attention to the "longstanding, presumptively constitutional" nature of these laws by saying that phrase from *Heller* had no doctrinal significance, Appellees' Br. at 49, however *Bruen* re-emphasized the point.

21

## B. Reconstruction Era Analogues are Not Legitimately Distinguishable.

Almost half of the States in the Union enacted reconstruction era age-restrictions similar to Minnesota's statute. *BATFE*, 700 F.3d at 202. All were enacted for the same reason, to ensure public safety by reducing the risk of danger that people under 21 pose with guns. Although *Bruen* does not require a "historical twin" or "dead ringer," 142 S. Ct. at 2133, Appellees nit-pick each law, arguing none is "just right."

Notably, Appellees claim none of the historical laws regulating "minors" are analogous to Minnesota's age-restriction because Appellees are legal adults today. Appellees' Br. at 42, 46. But the motivation behind such laws was not to target a legal status, but to target an age group, those under 21. This corresponds with Minnesota's law, which also was intended to affect ages under 21. Appellees' reliance on modern-day definitions of "minor" to distinguish historical laws is disingenuous and unavailing under *Bruen,* which requires a historical focus.

Appellees attempt to dispose of the pre-Civil war laws of Alabama, Tennessee, and Kentucky by arguing, based on vacated cases, that they relate to southern states' disarming of free Black people. Appellees' Br. at. 40-41. But on their face the laws are race neutral *as to minors*, are probative of the historical understanding of the right, and should not be wholesale ignored. *Jackson*, 69 F.4th at 503.

22

Next, Appellees attempt to distinguish the reconstruction era laws of Kentucky, Mississippi, Delaware, Illinois, Missouri, North Carolina, and Texas by claiming they prohibit sales to minors, therefore burdening the right in a different way.[6] But, this is requiring a historical "dead-ringer." A law affecting minors' acquisition of guns is even broader than Minnesota's statute because it also burdens their right to carry a gun in public, making them relevantly similar to Minnesota's law.

As to Nevada's statute, Appellees venture further down the dead-ringer rabbit hole, claiming this law does not burden the *exact* type of public carry that Minnesota's does, so it cannot be used. *Bruen* does not compel this result.

Finally, based on nothing other than a pre-*Bruen* law review article, Appellees claim Iowa's, Maryland's, Louisiana's, West Virginia's, and Wisconsin's laws are distinguishable because they "come from states with no Second Amendment analogue at the time they were enacted." Appellees' Br. at 45. There is *no such* requirement in *Bruen*. These laws all burden people under 21 in relevantly similar

---

[6] As noted by *amici* Everytown for Gun Safety, the position Appellee Firearms Policy Coalition [FPC] has taken in other cases forecloses this argument. "Notably, as for the comparability of the burden these laws placed on the Second Amendment right, in other cases challenging age restrictions on purchasing handguns, plaintiff [FPC] has repeatedly diminished the significance of any difference between a prohibition on sale of firearms to those under 21 and a prohibition on possession, arguing that "the right to 'have' arms implies the right to acquire them." Everytown Amicus Br. at 11, n. 6 (citation omitted).

23

ways as Minnesota's statute. To the extent they prohibit selling or giving guns to minors, that is broader than Minnesota's burden on the carrying as 18-to-20-year-olds in Minnesota may purchase or receive guns. Importantly, Wisconsin's law prohibits public carry nearly identically to Minnesota's current law: "It shall be unlawful for any minor, within this state, to go armed with any pistol or revolver…" 1883 Wis. Sess. Laws 290; Add. 56. These laws and Minnesota's law burden the right for the same reason, by restricting guns in the hands of people under 21 because of the risk of danger they pose to public safety.

Appellees dismiss two other statutes for reasons they claim are indicated by *Bruen* but are misplaced. First, they claim Kansas' law, which was passed by the *state legislature* cannot be used because the state supreme court upheld a *city* ordinance as constitutional and should not have according to *Bruen*. Appellees' Br. at 45; 142 S. Ct. at 2155. There is no relation between the Kansas state law and the state supreme court decision regarding a city ordinance that was criticized by *Bruen*. Second, Appellees dismiss Wyoming's law because *Bruen* indicated territorial laws were deserving of little weight. Appellees' Br. at 46; 142 S. Ct. at 2121. However, this law was passed in 1890, when Wyoming was not a territory, but a full-fledged state. State of Wyoming, *Wyoming History* (2021), https://www.wyo.gov/about-wyoming/wyoming-history (last accessed Aug. 31, 2023).

Appellate Case: 23-2248   Page: 32   Date Filed: 09/06/2023 Entry ID: 5313574

Appellees' attempts to distinguish the reconstruction era laws of half of the Nation's states fails. All burden the right in the same way, by limiting guns in the hands of people under 21, and all burden the right for the same reason, to reduce the risk of danger people under 21 pose to the public safety.

### C. More Nuanced Analogical Analysis Requires Consideration of Reconstruction Era Statutes.

"[C]ases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach. The regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Bruen*, 142 S. Ct. at 2132. As both are present here, a more nuanced analogical analysis is required.

First, societal concerns beyond what the Founders could have anticipated are present today. Mass and school shootings occur with greater frequency than ever before. We know now that 18-to-20-year-olds are statistically more dangerous than any other age group. App. 113-118; R. Doc. 50-1, at 61-66. Interpersonal gun violence was not a general societal concern in 1791. *Kotek*, 2023 WL 4541027, at *18.

Second, the dramatic technological changes of the Market Revolution resulted in two changes the Founders could not have anticipated: (a) the dominant weapon changed from a long gun to a handgun and (b) handguns became both more available and more affordable. App. 69; R. Doc. 50-1, at 17.

25

It was in this context that the states passed laws regulating minors under 21. Add. 54-57. Militia laws required people 18-to-20-years-old to be armed for the specific, defined purpose of serving in defense of state or country (not self). Militia service was very different than mid-nineteenth century Americans' every-day life. The increased availability of handguns – rather than long-guns suitable for militia service – coincides with the time when half the states passed age-restrictions. A more nuanced analysis considers these facts alongside reconstruction era analogues as evidence of an American tradition of age-restrictions that are relevantly similar to Minnesota's.

## IV.    SOVEREIGN IMMUNITY MAY BE RAISED AT ANY TIME.

The Commissioner has not waived sovereign immunity. The sole case Appellees cite for their waiver argument, *Glasgow v. Nebraska*, 819 F.3d 436 (8th Cir. 2016), is not a sovereign immunity case.

"Sovereign immunity is a 'threshold jurisdictional matter' and a 'jurisdictional prerequisite.'" *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686 (8th Cir. 2011). It "can be raised at any stage of the proceedings," including for the first time on appeal. *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998); *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984); *Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *Harmon Indus., Inc. v. Browner*, 191 F.3d 894,

26

903 (8th Cir. 1999). Sovereign immunity may even be raised for the first time before the Supreme Court:

> The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court.

*Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 467 (1945), *overruled on other grounds, Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 615 (2002).

Accordingly, the Commissioner has not waived sovereign immunity and maintains he is immune from suit. The E*x Parte Young* exception does not apply as the Commissioner has no connection with *enforcement* of Minnesota's challenged statute. *See* R. Doc. 78, at 1-3.

## CONCLUSION

The Commissioner respectfully requests the Court reverse the district court and order dismissal of the case.

Dated: September 6, 2023        Respectfully submitted,

                                     KEITH ELLISON
                                     Attorney General
                                     State of Minnesota

                                     s/ Amanda Prutzman
                                     AMANDA PRUTZMAN

27

Assistant Attorney General
Atty. Reg. No. 0389267

LIZ KRAMER
Solicitor General
Atty. Reg. No. 0325089

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1217 (Voice)
(651) 282-5832 (Fax)
Amanda.Prutzman@ag.state.mn.us
Liz.Kramer@ag.state.mn.us

ATTORNEYS FOR APPELLEE BOB
JACOBSON, COMMISSIONER FOR
THE MINNESOTA DEPARTMENT OF
PUBLIC SAFETY

28

# CERTIFICATE OF COMPLIANCE
## WITH FRAP 32

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.

s/ Amanda Prutzman
AMANDA PRUTZMAN
Assistant Attorney General

29

## CERTIFICATE OF COMPLIANCE
## WITH 8th Cir. R. 28A(h)(2)

The undersigned, on behalf of the party filing and serving this brief, certifies

that the brief has been scanned for viruses and that the brief is virus-free.


s/ Julie Peick
Julie Peick


|#5582658-v1

Appellate Case: 23-2248    Page: 38    Date Filed: 09/06/2023 Entry ID: 5313574