# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

Kristin Worth; Austin Dye; Axel Anderson; Minnesota Gun Owners Caucus; Second Amendment Foundation; Firearms Policy Coalition, Inc.,

*Plaintiffs-Appellees*

vs.

Bob Jacobson, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety,

*Defendant-Appellant*

Kyle Burton, in his individual capacity and in his official capacity as Sheriff of Mille Lacs County, Minnesota; Dan Starry, in his individual capacity and in his official capacity as Sheriff of Washington County, Minnesota; Troy Wolbersen, in his individual capacity and in his official capacity as Sheriff of Douglas County, Minnesota

*Defendants*

APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
No. 21-cv-01348 (KMM/LIB)

PETITION FOR REHEARING OR REHEARING *EN BANC*

Office of the Minnesota Attorney General

LIZ KRAMER (#0325089)
Solicitor General
PETER J. FARRELL (#0393071)
Deputy Solicitor General
AMANDA PRUTZMAN (#0389267)
Assistant Attorney General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2128

liz.kramer@ag.state.mn.us
peter.farrell@ag.state.mn.us
amanda.prutzman@ag.state.mn.us
Phone: (651) 757-1010

*Attorneys for Defendant-Appellant Bob Jacobson, in his official capacity as Commissioner of the Minnesota Department of Public Safety*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT SUPPORTING REHEARING ......................................... 1

ARGUMENT .................................................................................................4

I.  THE PANEL'S SECOND AMENDMENT ANALYSIS IS INCONSISTENT WITH *RAHIMI* AND EIGHTH CIRCUIT PRECEDENT. .......................................................................4

    A.  After *Rahimi*, the Appropriate Focus Is on Historical Principles, Not Individual Analogues. ................................................4

    B.  The District Court and Panel in this Case Committed the Same Errors as the Fifth Circuit in *Rahimi*. ...................................5

    C.  The Panel Created an Intra-Circuit Conflict. .......................6

II. THE CHALLENGED STATUTE SHOULD BE UPHELD UNDER *RAHIMI*. ..................8

    A.  The Panel Decision Misapplied *Rahimi* to the Founding-Era Evidence. ........................................................9

    B.  The Panel Decision Misapplied *Rahimi* to the 19th-Century Evidence. ......................................................10

    C.  The Panel Decision Conflicts With *Rahimi* on Dangerousness. ..........12

III. THE PANEL DECISION CONFLICTS WITH SUPREME COURT PRECEDENT ON STANDING. ...................................................14

CONCLUSION ..........................................................................................17

i

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ala. Legis. Black Caucus v. Alabama*
575 U.S. 254 (2015) ........................................................................ 15

*Brown v. Ent. Merchs. Ass'n*
564 U.S. 786 (2011) .......................................................................... 9

*Carney v. Adams*
592 U.S. 53 (2020) .......................................................................... 14

*District of Columbia v. Heller*
554 U.S. 570 (2008) ........................................................................ 11

*FDA v. All. for Hippocratic Med.*
602 U.S. 367 (2024) .................................................................. 14, 16

*Jackson v. United States*
2024 WL 3259675 (U.S. July 2, 2024) ........................................... 6

*Lara v. Commissioner Pennsylvania State Police*
91 F.4th 122 (3d Cir. 2024) ............................................................ 2

*McDonald v. Chicago*
561 U.S. 742 (2010) ........................................................................ 11

*Murthy v. Missouri*
144 S. Ct. 1972 (2024) ............................................................. 14, 15

*N.Y. State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2023) ..................................................................... Passim

*Nat'l Rifle Ass'n v. Bondi*
72 F.4th 1346 (11th Cir. 2023) ....................................................... 3

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*
551 U.S. 701 (2007) ........................................................................ 15

ii

*United States v. Jackson*
   69 F.4th 495 (8th Cir. 2023) .................................................................. 6, 7

*United States v. Rahimi*
   61 F.4th 443 (5th Cir. 2023) ..................................................................... 5

*United States v. Rahimi*
   602 U.S. __, 144 S. Ct. 1889 (2024) ............................................... Passim

*United States v. Veasley*
   98 F.4th 906 (8th Cir. 2024) ................................................................. 2, 6

## STATE STATUTES

18 Pa. Cons. Stat. § 6109 ......................................................................... 1

430 Ill. Comp. Stat. 66/25 ........................................................................ 1

Alaska Stat. § 11.61.220(a)(6) ................................................................. 1

Alaska Stat. § 18.65.705 ........................................................................... 1

Ariz. Rev. Stat. Ann. § 13-3102(A)(2) .................................................... 1

Ariz. Rev. Stat. Ann. § 13-3112(E) .......................................................... 1

Ark. Code Ann. § 5-73-309 ....................................................................... 1

Colo. Rev. Stat. § 18-12-203(1)(b) .......................................................... 1

Conn. Gen. Stat. § 29-28 ........................................................................... 1

Conn. Gen. Stat. § 29-36f .......................................................................... 1

D.C. Code § 7-2509.02(a)(1) .................................................................... 1

Del. Code Ann. tit. 11, § 1448(a)(5) ........................................................ 1

Fla. Stat. § 790.06 ..................................................................................... 1

Fla. Stat. § 790.053 ................................................................................ 1

Ga. Code Ann. § 16-11-125.1(2.1) ........................................................ 1

Ga. Code Ann. § 16-11-126(g)(1) .......................................................... 1

Ga. Code Ann. § 16-11-129(b)(2)(A) ..................................................... 1

Haw. Rev. Stat. § 134-9(a)(6) ................................................................ 1

Ky. Rev. Stat. Ann. § 237.110 ............................................................... 1

La. Stat. Ann. § 40:1379.3(C)(4) ........................................................... 1

Mass. Gen. Laws ch. 140, § 131(d)(iv) .................................................. 1

Md. Code Ann., Pub. Safety § 5-306(a)(1) ............................................. 1

Md. Code Ann., Pub. Safety § 5-133(d)(1) ............................................. 1

Mich. Comp. Laws § 28.425b(7)(a) ....................................................... 1

Minn. Stat. § 97B.021 ............................................................................ 1

Minn. Stat. § 624.713, subd. 1(1) .......................................................... 1

Minn. Stat. § 624.714, subd. 2(b)(2) ...................................................... 1

N.C. Gen. Stat. § 14-415.12(a)(2) .......................................................... 1

N.J. Stat. Ann. § 2C:58-3(c)(4) .............................................................. 1

N.M. Stat. Ann. § 29-19-4(A)(3) ........................................................... 1

N.Y. Penal Law § 400.00(1)(a) .............................................................. 1

Neb. Rev. Stat. § 69-2433 ...................................................................... 1

Nev. Rev. Stat. § 202.3657 ..................................................................... 1

Appellate Case: 23-2248   Page: 6   Date Filed: 07/30/2024 Entry ID: 5418615

Ohio Rev. Code Ann. § 2923.125(D)(1)(b) ............................................... 1

Okla. Stat. tit. 21 § 1272(A)(6) ............................................................... 1

Or. Rev. Stat. § 166.291 ......................................................................... 1

R.I. Gen. Laws § 11-47-11 ...................................................................... 1

R.I. Gen. Laws § 11-47-18 ...................................................................... 1

S.C. Code Ann. § 23-31-215(A) .............................................................. 1

Utah Code Ann. § 76-10-505 ................................................................... 1

Utah Code Ann. § 76-10-523(5) .............................................................. 1

Va. Code Ann. § 18.2-308.02 .................................................................. 1

Wash. Rev. Code § 9.41.070 ................................................................... 1

Wis. Stat. § 175.60(3)(a) ......................................................................... 1

Wyo. Stat. Ann. § 6-8-104(a)(iv), (b)(ii) ................................................ 1

**FEDERAL RULES**

Fed. R. App. P. 35(a) .............................................................................. 3

**OTHER AUTHORITIES**

Jacob Charles, *One Year of Bruen's Reign: An Updated Empirical Analysis*
Duke Center for Firearms Law (July 7, 2023) ....................................... 7

v

## STATEMENT SUPPORTING REHEARING

The common sense gun regulation at issue here is limited and temporary. Minnesota allows significant access to guns by young people. Minnesota does not restrict the possession or use of firearms by youths of any age when supervised by parents or guardians. Minn. Stat. § 624.713, subd. 1(1); Minn. Stat. § 97B.021. By age 14, teenagers may possess guns on their property or when hunting without parental supervision if they obtain a firearms safety certificate. Minn. Stat. § 97B.021. And by age 18, young people may possess a pistol or semiautomatic assault weapon in those same situations. *Id.*; Minn. Stat. § 624.713, subd. 1(1).

Against that backdrop, Minnesota's legislature imposed a modest restriction: young people may not obtain a permit to carry a pistol *in public* until age 21. Minn. Stat. § 624.714, subd. 2(b)(2) (the Challenged Statute). Minnesota's law has been in effect for two decades. Thirty states and the District of Columbia have similar regulations.[1]

---

[1] 15 jurisdictions limit those under 21 from any public carry. Conn. Gen. Stat. §§ 29-28, 29-36f; Del. Code Ann. tit. 11, § 1448(a)(5); Fla. Stat. §§ 790.06, 790.053; Ga. Code Ann. §§ 16-11-125.1(2.1), 16-11-126(g)(1), 16-11-129(b)(2)(A); Haw. Rev. Stat. § 134-9(a)(6); 430 Ill. Comp. Stat. 66/25; Md. Code Ann., Pub. Safety §§ 5-306(a)(1), 5-133(d)(1); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann. § 2C:58-3(c)(4); N.Y. Penal Law § 400.00(1)(a); Okla. Stat. tit. 21 § 1272(A)(6); R.I. Gen. Laws §§ 11-47-11, 11-47-18; S.C. Code Ann. § 23-31-215(A); D.C. Code § 7-2509.02(a)(1). 19 additional states bar people under 21 from concealed public carry. Alaska Stat. §§ 11.61.220(a)(6), 18.65.705; Ariz. Rev. Stat. Ann. §§ 13-3102(A)(2), 13-3112(E); Ark. Code Ann. § 5-73-309; Colo. Rev. Stat. § 18-12-203(1)(b); Ky. (Footnote continued on next page)

1

Two weeks ago, a panel of this Court held Minnesota's restriction unconstitutional. In doing so, it became the first federal circuit to strike down a general age-based gun regulation.[2] It also became the first federal circuit to address a Second Amendment challenge after the Supreme Court decided *United States v. Rahimi*, 602 U.S. __, 144 S. Ct. 1889 (2024), which offers important guidance on analyzing those challenges. The panel issued its decision without giving the parties an opportunity to address the impact of *Rahimi* or significant new decisions from the Supreme Court on standing.[3]

The panel's decision conflicts with those new decisions. It also conflicts with recent decisions of this Court, which anticipated *Rahimi*'s focus on principles rather than analogues. *E.g.*, *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024).

---

Rev. Stat. Ann. § 237.110; La. Stat. Ann. § 40:1379.3(C)(4); Mich. Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; Nev. Rev. Stat. § 202.3657; N.M. Stat. Ann. § 29-19-4(A)(3); N.C. Gen. Stat. § 14-415.12(a)(2); Ohio Rev. Code Ann. § 2923.125(D)(1)(b); Or. Rev. Stat. § 166.291; 18 Pa. Cons. Stat. § 6109; Utah Code Ann. §§ 76-10-505, 76-10-523(5); Va. Code Ann. § 18.2-308.02; Wash. Rev. Code § 9.41.070; Wis. Stat. § 175.60(3)(a); Wyo. Stat. Ann. § 6-8-104(a)(iv), (b)(ii).

[2] The statute declared unconstitutional in *Lara v. Commissioner Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024), was limited to restricting young people's public gun use during a state of emergency.

[3] *Compare Reese v. Bureau of Alcohol Tobacco, Firearms & Explosives*, No. 23-30033 (5th Cir. argued Nov. 6, 2023) (requesting letter briefs addressing *Rahimi* on July 8, 2024).

Appellate Case: 23-2248    Page: 9    Date Filed: 07/30/2024 Entry ID: 5418615

In addition to creating conflicts with Supreme Court and intra-circuit precedent, the panel decision meets the criteria for en banc review because it addresses exceptionally important legal issues, including: (1) Did Minnesota provide sufficient evidence of a principle that young people's public use of guns can be restricted?;[4] and (2) Must the members of an organization that the organization relies on for standing have been members at the start of the case, or at least identified in district court? *See* Fed. R. App. P. 35(a). One federal circuit has already acknowledged that the first issue meets the standard for rehearing. *Nat'l Rifle Ass'n v. Bondi*, 72 F.4th 1346, 1347 (11th Cir. 2023) (mem.).

These issues are exceptionally important because lives are at stake. Minnesota's expert reported that "in 2019, the single most homicidal age group in the nation was age 19, with both 18- and 20-year-olds having higher murder arrest rates than any other age groups except for age 19." App. 114; R. Doc. 50-1, at 12. That age group is not just homicidal generally; it "has long been recognized as the most likely to use firearms to commit homicides and other violent crimes." App. 116; R. Doc. 50-1, at 14.

---

[4] Because *Rahimi* did not address the first step of the *Bruen* analysis—the step interpreting the scope of the plain text of the Second Amendment—Minnesota does not request rehearing of its arguments on the first step. It reserves its right to raise them in any later proceedings, however.

Appellate Case: 23-2248     Page: 10     Date Filed: 07/30/2024 Entry ID: 5418615

Minnesota respectfully seeks rehearing or rehearing en banc on the Second Amendment and standing issues.  Alternatively, if the Court does not rehear the Second Amendment issue, it should vacate the panel opinion and remand to the district court to address standing.

## ARGUMENT

### I. THE PANEL'S SECOND AMENDMENT ANALYSIS IS INCONSISTENT WITH *RAHIMI* AND EIGHTH CIRCUIT PRECEDENT.

By discounting Minnesota's evidence of principles that support the Challenged Statute and instead nit-picking each regulation that Minnesota offered as an inadequate analogue, the panel decision conflicts with *Rahimi* and recent decisions of this Court.

#### A. After *Rahimi*, the Appropriate Focus Is on Historical Principles, Not Individual Analogues.

The Supreme Court acknowledged in *Rahimi* that "some courts have misunderstood the methodology of our recent Second Amendment cases." 144 S. Ct. at 1897.  In particular, the Fifth Circuit had misunderstood its task when assessing whether a federal statute criminalizing firearm possession by those subject to a domestic violence restraining order violated the Second Amendment.  The Fifth Circuit rejected every historical regulation offered by the government by looking for the equivalent of a "historical twin." *Id.* at 1903 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 30 (2023)).  For example, it held that "going armed laws" were not sufficiently analogous because they were "disarming those who had been

adjudicated to be a threat to society generally, rather than to identified individuals."
*United States v. Rahimi*, 61 F.4th 443, 459 (5th Cir. 2023). And it concluded that surety laws were not sufficiently analogous because they "did not prohibit public carry, much less possession of weapons, so long as the offender posted surety." *Id.* at 460.

Yet, the Supreme Court found that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 144 S. Ct. at 1901. The current law "does not need" to be "identical to these founding era regimes," *id.*, but only "'consistent with the Nation's historical tradition of firearm regulation,'" *id.* at 1896 (quoting *Bruen*, 597 U.S. at 24). The critical question is "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* at 1898 (emphasis added) (citing *Bruen*, 597 U.S. at 26–31). The Court disavowed multiple times the need for historical regulations that were a perfect match for current statutes. *Id.* at 1897, 1898.

**B.** **The District Court and Panel in this Case Committed the Same Errors as the Fifth Circuit in *Rahimi*.**

*Rahimi*'s clarification is critical here and requires rehearing and reversal. Like the Fifth Circuit, the district court in this case misunderstood what *Bruen* demanded. The district court performed a hypercritical analysis of each historical analogue offered by Minnesota, finding each wanting. Add. 20–38; App. 20–35; R. Doc. 84,

5

at 20–38.  But, like the Fifth Circuit in *Rahimi*, the district court did not understand that it could consider all the evidence cumulatively proffered by Minnesota and evaluate whether a consistent principle of regulation supported the Challenged Statute.

Instead of correcting the district court's error, the panel decision repeats it.  It never once attempts to identify the principle or principles that underpin our nation's long tradition of regulating public gun use by young people as required by *Rahimi*.  *See generally* Op. 17–27.  Instead, it demanded of Minnesota "an adequate historical analogue" that was "well-established and representative," *id.* 17, and examined each analogue proffered by Minnesota in isolation for an exacting review of its "how" and "why," *id.* 21–27.

## C.    The Panel Created an Intra-Circuit Conflict.

The panel also created an intra-circuit analytical split with *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024) and *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023).[5]  Both decisions were issued before *Rahimi* but appropriately conducted the Second Amendment analysis at the level of principles.

In *Veasley,* the facial challenge was to a federal statute criminalizing possessing a firearm when unlawfully using drugs.  98 F.4th at 908.  This Court

---

[5] After *Rahimi*, the Supreme Court granted certiorari and vacated judgment in *Jackson*. No. 23-6170, 2024 WL 3259675 (U.S. July 2, 2024).

Appellate Case: 23-2248     Page: 13     Date Filed: 07/30/2024 Entry ID: 5418615

upheld the statute, although it found no colonial-era regulations that disarmed people for drinking or using drugs. *Id.* at 912. Despite that dearth of evidence, the court reviewed two different types of restrictions and "reason[ed] by analogy." *Id.* It concluded that the tradition of confining the mentally ill imposed more "heavy-handed" burdens than did the statute under review. *Id.* at 915. It also considered the "going armed laws," reasoning that they criminalized the possession of a gun while engaging in offensive behavior, just like the statute under review. *See id.* at 916–18. The *Veasley* opinion accurately predicted *Rahimi*'s emphasis on principles, not carbon copy analogues.

*Jackson* is the same story. It surveyed hundreds of years of history and identified two principles from that precedent. *Id.* at 502–06. The first principle related to disarming categories of people deemed to threaten societal order, and the second disarming people deemed dangerous. Because either principle supported disarming convicted felons, this Court found the statute passed constitutional muster. Although *Jackson* was vacated and remanded after *Rahimi*, nearly every federal court to address the same statute has affirmed its constitutionality.[6] Plus, *Rahimi*

---

[6] Jacob Charles, *One Year of Bruen's Reign: An Updated Empirical Analysis*, Duke Center for Firearms Law (July 7, 2023), https://perma.cc/WW86-B7A8 (finding only one court decision held the federal prohibition on felon possession of firearms unconstitutional while 160 upheld it during year after *Bruen*).

said the statute is presumptively constitutional, so there is no reason to believe this Court will now find no historical principles to support it.

The panel decision conflicts with the method of analysis in *Veasley* and *Jackson*. Those cases canvassed the legal landscape to identify historical analogues to the criminal statutes in question, and extracted principles from those (admittedly imperfect) analogues. In contrast, this panel decision, issued with the benefit of *Rahimi*, made no attempt to discern any principles from the common law history and tradition of regulation that Minnesota supplied.

## II. THE CHALLENGED STATUTE SHOULD BE UPHELD UNDER *RAHIMI*.

If the panel decision properly applied *Rahimi*, it would have concluded that the Challenged Statute "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1891 (citing *Bruen*, 597 U.S. at 26–31). From the founding era to Reconstruction and beyond, the nation has a strong regulatory tradition of age-based restrictions on public firearm use for those under 21 years old. Minnesota's limited, temporary restriction on firearm access for 18- to 20-year-olds "fits neatly" within this regulatory tradition and flows from the same principles that undergird similar regulations throughout our nation's history. *Id.* at 1901.

The panel decision departs from *Rahimi* in holding otherwise. In particular, the panel misapplied *Rahimi* to founding-era and 19th-century evidence. The panel also misconstrued *Rahimi*'s guidance on dangerousness.

8

### A. The Panel Decision Misapplied *Rahimi* to the Founding-Era Evidence.

Critically, the panel decision acknowledged—but then ignored—the common law. At the founding, the common law rule was that 18- to 20-year-olds were not adults but "infants" in the eyes of the law with limited legal capacity and rights. The panel decision alluded to this background rule, conceding that, "Minnesota cites common law evidence that (as minors) 18- to 20-year-olds did not have full rights." Op. 21. The panel decision also recognized that "the common law 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (quoting *Bruen*, 597 U.S. at 19).

But the panel trivialized the common law and other founding-era sources, faulting Minnesota for a lack of "analogues." *Id.* 21, 23, 26. But under *Rahimi*, the panel should have focused on principles—not analogues. The panel then compounded its methodological error by misconstruing the founding-era evidence. Minnesota's expert established—and the panel agreed—that the common law *itself* restricted the rights of minors until they reached the age of 21. *See* Op. 21; App. 53–169; R. Doc. 50-1, at 10–12; *see also Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 822–23 (2011) (Thomas, J., dissenting) ("The historical evidence shows that the founding generation believed parents had *absolute authority* over their minor children . . . ." (emphasis added)). The common law thus establishes a broader background principle: that restrictions on legal rights until the age of 21 are part of

9

the nation's historical tradition.  *Rahimi* required the panel to ascertain and grapple with that principle.  It did not.

Moreover, by demanding "overly specific analogues," the panel made a flawed inference from legislative silence, assuming "that founding-era legislatures maximally exercised their power to regulate."  *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring).  That assumption has "serious problems" because it adopts "a 'use it or lose it' view of legislative authority."  *Id.*  But even beyond that flawed assumption, the panel misapprehended the import of the founding-era statutes.  The militia statutes underscore that 18- to 20-year-olds lacked an independent right to publicly carry firearms beyond the context of the militia, where they were subject to "military order, discipline, and law."  App. 53–169; R. Doc. 50–1, at 12.  Indeed, if 18- to 20-year-olds had an independent right to possess firearms in public, then state militia laws would not have needed to create special rules for those under 21 years old.  *See, e.g.*, 1785 Del. Laws 59, §§ 7–8; 1776 Acts & Laws of the Colony of N.H. 36, 39 (1776).

### B.    The Panel Decision Misapplied *Rahimi* to the 19th-Century Evidence.

The remainder of the panel decision suffers from the same analytical defects. Most significantly, the panel discounted the overwhelming 19th-century evidence that supports modest and temporary age restrictions on the public carry of firearms.

10

The panel's approach reflected a hunch about how the Supreme Court may rule in the future. At the outset of its analysis, the panel questioned whether "Reconstruction-era sources have much weight," and confidently asserted that "postenactment history of the Fourteenth Amendment is *not* given weight." Op. 24 (emphasis added).

But as *Rahimi* reiterated, the Supreme Court has yet to resolve this issue. 144 S. Ct. at 1898 n.1 (declining to wade into "ongoing scholarly debate"). And the Supreme Court's major Second Amendment cases have repeatedly considered—and found relevant—statutes, case law, and other legal sources from the 19th century. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 605–26 (2008) (examining a variety of legal sources "through the end of the 19th century"); *accord Rahimi*, 144 S. Ct. at 1899–1901 (citing Massachusetts surety statute from 1836 and "going armed" prohibitions from 1843 and 1849); *Bruen*, 597 U.S. at 60–66 (analyzing evidence "from around the adoption of the Fourteenth Amendment"); *McDonald v. Chicago*, 561 U.S. 742, 770–78 (2010) (plurality opinion) (analyzing understanding of right to keep and bear arms in 1868). True, the Court has cautioned that post-ratification history cannot override text. *Bruen*, 597 U.S. at 35–36. But unless and until the Supreme Court designates 19th-century evidence off limits, lower federal courts must give it careful, nuanced consideration.

11

The panel decision did not do that here. Although the panel acknowledged that "Minnesota proffer[ed] 20 state laws from the Reconstruction-era and late 19th Century that in some way limit the Second Amendment rights of those under 21 years old," the panel refused to draw or consider principles from those laws. Op. 25. Instead, it focused on minor differences in the "how" of each regulation, in essence requiring Minnesota to identify a historical twin. *Id.* 25–26. The panel thus held Minnesota to a standard that *Rahimi* rejected, and the Second Amendment does not demand.

### C. The Panel Decision Conflicts With *Rahimi* on Dangerousness.

The panel's approach to dangerousness also conflicts with *Rahimi*. Minnesota presented robust historical evidence—from the founding era and beyond—that legislatures have long denied firearms to categories of people who pose (or are perceived to pose, rightly or wrongly) special dangers. In the language of *Rahimi*, this historical tradition reveals a principle: that a legislature may disarm a group of people who pose special dangers of misusing firearms, such as minors or the mentally ill, for public safety.

The panel decision did not try to derive a dangerousness principle from history. Instead, the panel simply decided that Minnesota's evidence of the danger posed by 18- to 20-year-olds was insufficient. Op. 19–20. But the panel should not

have proceeded to weigh the evidence without identifying the principle underlying the (undisputed) tradition of disarming groups thought to be particularly dangerous.

By failing to focus on history and principles, the panel conducted exactly the type of freewheeling interest balancing, or means-end scrutiny, that the Supreme Court has rejected. *Bruen*, 597 U.S. at 22–24. The panel claimed, for example, that Minnesota's "general crime statistics" were inadequate, although it did not dispute the accuracy of the statistics. Op. 20. The panel also rejected Minnesota's expert on the special dangers posed by 18- to 20-year-olds because the report was "prepared solely for this case," and cited data that Minnesota's legislature "could not have relied on" when enacting the underlying law. *Id.*

None of these criticisms pertain to the historical inquiry. Under *Bruen*, much less *Rahimi*, the question is not whether a modern firearms law is good policy, but whether the historical record supports the challenged law. The panel evaded that question; the full Circuit should consider it.[7]

---

[7] Moreover, to the extent the panel weighed the evidence of dangerousness, it was inappropriate to do so for the first time on appeal. The district court declined to consider the (undisputed) evidence of the special risks posed by 18- to 20-year-olds because it "belong[ed] to a regime of means-end scrutiny scuttled by *Bruen*." Add. 39; App. 39; R. Doc. 84, at 39. To the extent that evidence *is* relevant—and the panel found it was—the panel should have remanded to the district court.

Appellate Case: 23-2248     Page: 20     Date Filed: 07/30/2024 Entry ID: 5418615

## III. THE PANEL DECISION CONFLICTS WITH SUPREME COURT PRECEDENT ON STANDING.

In addition to creating conflicts with its Second Amendment analysis, the panel decision also created conflicts with its jurisdictional analysis.

Before oral argument, Minnesota asserted this case was moot, because the three young adults the organizational plaintiffs had relied on for standing had all turned 21 by December 2023. Nevertheless, the panel allowed those organizations to supplement the record by obtaining and naming a new 19-year-old member-plaintiff, who was never identified in district court and who the panel found sufficiently supported their organizational standing. That decision conflicts with the Supreme Court's end-of-term decisions reiterating the importance of standing doctrines to maintain appropriate separation of powers. *E.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024); *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024).

In *Murthy*, the Supreme Court noted: "The plaintiff 'bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter.'" 144 S. Ct. at 1986 (alterations in original) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). The organizational plaintiffs here cannot meet that burden. They rely exclusively for appellate standing on an individual who did not become a member until this case was on appeal. But *Murthy* does not say a plaintiff with standing at the time of suit can simply ensure that *someone* maintains standing

14

thereafter. It says "[t]he plaintiff" who brings the suit must have continuous standing, *id.*, and for an organization, that means the organization's members at the time of filing the lawsuit must support standing throughout the litigation. In response to Minnesota's motion to dismiss, the organizational plaintiffs could cite no precedential case allowing an organization to add a new member on appeal in order to maintain its Article III standing.[8]

The panel decision did not cite any of the significant 2024 Supreme Court cases regarding standing. Nor did the panel invite the parties to address them. Instead, the panel decision supported its jurisdictional decision primarily with a 2015 dissent from Justice Scalia. Op. 8 (citing *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 285–86 (2015) (Scalia, J., dissenting)). In his dissent, Justice Scalia cited an earlier decision allowing a plaintiff to identify additional members while a case was on appeal. *Ala. Legis. Black Caucus*, 575 U.S. at 286 (discussing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007)). No source, however, suggests that the members identified had not been members when the case was initiated. *See id.* (noting that plaintiff was an organization of parents

---

[8] The panel correctly notes that both the Third and Fifth Circuits have allowed similar substitution in their cases involving 18- to 20-year-olds challenging gun regulations. Op. 7–8. But those orders also lack any citation to precedent authorizing a wholesale change to standing on appeal.

Appellate Case: 23-2248     Page: 22     Date Filed: 07/30/2024 Entry ID: 5418615

who identified some of their children in district court, and additional children of same parents to prove case was not moot later).

The panel's decision to base Article III standing on a post-appeal declaration is egregious for two additional reasons. First, Minnesota could not conduct discovery of the single declarant supporting all plaintiffs' standing, given his late identification. Discovery could reveal that he is otherwise ineligible. For example, on its face, the declaration shows Mr. Knudsen has not taken the required safety training to obtain a permit. In other words, even if the age limit were modified, he could not immediately obtain a permit.

And second, the panel's approach opens the door for large associations having standing to challenge any and all regulations at state and national levels, serving as an end run around our requirements for class actions. *All. for Hippocratic Med.*, 602 at 399–400 (Thomas, J., concurring). Indeed, if an organization could sue on behalf of the members it has when it initiates a lawsuit and continually swap out the members on which it relies for standing, it could become a group of "citizens who might roam the country in search of governmental wrongdoing," an anathema to the concept of Article III standing. *Id*. at 379 (internal quotation omitted).

Because the standing issue involves questions of fact, this Court should grant rehearing to vacate the panel decision and remand to district court for a fuller determination of the plaintiffs' continued standing.

16

## CONCLUSION

For all these reasons, the panel should grant rehearing or the Court should grant rehearing en banc. At minimum, the Court should vacate the panel opinion and remand to the district court to address standing.


Dated: July 30, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Liz Kramer**
LIZ KRAMER (#0325089)
Solicitor General
PETER J. FARRELL (#0393071)
Deputy Solicitor General
AMANDA PRUTZMAN (#0389267)
Assistant Attorney General

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
liz.kramer@ag.state.mn.us
peter.farrell@ag.state.mn.us
amanda.prutzman@ag.state.mn.us
Phone: (651) 757-1010

*Attorneys for Defendant-Appellant*
*Bob Jacobson, in his official capacity as*
*Commissioner of the Minnesota Department*
*of Public Safety*

17

## CERTIFICATE OF COMPLIANCE
## WITH FRAP 32(a)

1.      This petition complies with the type-volume limitation of Fed. R. App.

P. 35(b)(2)(A) because this brief contains 3,888 words, excluding the parts of the

petition exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This petition complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft

Word 365 in 14 pt Times New Roman font.

3.      The undersigned, on behalf of the party filing and serving this petition,

certifies that the petition has been scanned for viruses and that it is virus-free.


Dated:  July 30, 2024                         s/ **Liz Kramer**
                                              LIZ KRAMER (#0325089)
                                              Solicitor General

18