No. 23-2248

## IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

KRISTIN WORTH, et al.,

*Plaintiffs-Appellees*,

vs.

BOB JACOBSON, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety.

*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Minnesota

## BRIEF OF *AMICI CURIAE* GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, BRADY CENTER TO PREVENT GUN VIOLENCE, AND MARCH FOR OUR LIVES FOUNDATION IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR REHEARING *EN BANC*

[Additional Counsel Listed on Signature Page]

Sophie A. Kivett
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-3243
kivetts@sullcrom.com

August 6, 2024

*Counsel for* Amici Curiae *Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal pursuant to Local Rule 29A.

1. Kramer, Liz (Counsel for Appellant)

2. Prutzman, Amanda (Counsel for Appellant)

3. State of Minnesota Office of the Attorney General

4. Commissioner of the Minnesota Department of Public Safety (Appellant)

5. Thompson, David (Counsel for Appellees)

6. Patterson, Peter (Counsel for Appellees)

7. Bergstrom, William (Counsel for Appellees)

8. Minnesota Gun Owners Caucus (Appellee)

9. Second Amendment Foundation (Appellee)

10. Firearms Policy Coalition, Inc. (Appellee)

11. Worth, Kristin (Appellee)

12. Dye, Austin (Appellee)

13. Anderson, Axel (Appellee)

14. Giffords Law Center to Prevent Gun Violence (*Amicus Curiae*)

15. Giffords (Affiliate of *Amicus Curiae* Giffords Law Center to Prevent Gun Violence)

16. Giffords PAC (Affiliate of *Amicus Curiae* Giffords Law Center to Prevent Gun Violence)

17. Brady Center to Prevent Gun Violence (*Amicus Curiae*)

18. March For Our Lives Foundation (*Amicus Curiae*)

19. Albornoz, Beatriz L. (Of Counsel for *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

20. Jenks, Madeline B. (Of Counsel for *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

21. Kivett, Sophie A. (Counsel of Record for *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

22. Rose, Elizabeth A. (Of Counsel for *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

23. Sacks, Robert A. (Of Counsel for *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

24. Sanchez-Gomez, Esther (Of Counsel for *Amicus Curiae* Giffords Law Center to Prevent Gun Violence)

25. Letter, Douglas N. (Of Counsel for *Amicus Curiae* Brady Center to Prevent Gun Violence)

Appellate Case: 23-2248    Page: 3    Date Filed: 08/09/2024 Entry ID: 5423112

26.   Feldman, Shira Lauren (Of Counsel for *Amicus Curiae* Brady Center to Prevent Gun Violence)

27.   Sullivan & Cromwell LLP (Law firm representing *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

28.   Traps, Leonid (Of Counsel for *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation)

Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation state that each organization does not have parent corporations.  They do not have stock, and therefore no publicly held company owns 10% or more of their stock.

> */s/ Sophie A. Kivett*
> Sophie A. Kivett
>
> *Counsel for* Amici Curiae *Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation*
>
> August 6, 2024

Appellate Case: 23-2248     Page: 4     Date Filed: 08/09/2024 Entry ID: 5423112

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................1

REASONS FOR GRANTING REHEARING ...........................................2

    I.    The Panel's Decision Conflicts with Binding Precedent and Undermines Lawmakers' Ability to Enact Laws That Prevent Gun Violence Consistently with the Constitution..........................................................2

    II.   The Minnesota Law Fits Within the Historical Tradition of Regulating Groups Posing a Heightened Risk of Violence When Armed .................................8

CONCLUSION .................................................................14

Appellate Case: 23-2248    Page: 5    Date Filed: 08/09/2024 Entry ID: 5423112

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*District of Columbia* v. *Heller,*
554 U.S. 570 (2008) ........................................................... 5, 6

*Gall* v. *United States,*
552 U.S. 38 (2007) ................................................................. 9

*Graham* v. *Florida,*
560 U.S. 48 (2010) ................................................................. 9

*Kipke* v. *Moore,*
695 F. Supp. 3d 638 (D. Md. 2023) .................................... 7

*Koons* v. *Platkin,*
673 F. Supp. 3d 515 (D.N.J. 2023) .................................... 7

*New York State Rifle & Pistol Ass'n* v. *Bruen,*
597 U.S. 1 (2023) .......................................................... *passim*

*United States* v. *Daniels,*
77 F.4th 337 (5th Cir. 2023) ............................................... 6

*United States* v. *Gould,*
672 F. Supp. 3d 167 (S.D. W. Va. 2023) ............................ 6

*United States* v. *Jackson,*
69 F.4th 495 (8th Cir. 2023) ........................................... 4-5

*United States* v. *Rahimi,*
144 S. Ct. 1889 (2024) .................................................. *passim*

## Constitution and Rules

U.S. CONST. amend. II ...................................................... *passim*

Appellate Case: 23-2248     Page: 6     Date Filed: 08/09/2024 Entry ID: 5423112

[Fed. R. App. P. 29](#) ....................................................................... 1

[Fed. R. App. P. 35](#) ....................................................................... 2

[Fed. R. App. P. 40](#) ....................................................................... 2

**Other Authorities**

*A Partial List of Mass Shootings in the United States in 2022*, N.Y. TIMES (Jan. 24, 2023) .......................................................... 12

Centers for Disease Control and Prevention, Web-based Injury Statistics Query and Reporting System (WISQARS), *Leading Cause of Death Reports, 1981–2020* (last visited Aug. 6, 2024) ......... 13

Daniel W. Webster et al., *The Case for Gun Policy Reforms in America*, JOHNS HOPKINS CTR. FOR GUN POL'Y & RSCH. (2012) ......... 11

E. Michael Lewiecki & Sara A. Miller, *Suicide, Guns, and Public Policy*, 103 AM. J. PUB. HEALTH 27 (2013) ........................................... 13

Glenn Thrush & Matt Richtel, *A Disturbing New Pattern in Mass Shootings: Young Assailants*, N.Y. TIMES (June 2, 2022) ................. 11

Isabel Rosales et al., *6 People Face Murder Charges for the Sweet 16 Party Massacre That Left 4 Dead and 32 Injured*, CNN (Apr. 21, 2023) ..................................................................... 12

Jay N. Giedd et al., *Why Do Many Psychiatric Disorders Emerge During Adolescence?*, 9 NATURE REVS. NEUROSCIENCE 947, 952 (2008) ...................................................................... 13

Mariam Arain et al., *Maturation of the Adolescent Brain*, 9 NEUROPSYCHIATRIC DISEASE & TREATMENT 449, (2013) .................... 9

Matthew Miller et al., *Suicide Mortality in the United States*, 33 ANN. REV. PUB. HEALTH 393 (2012) ............................................ 14

Megan Walsh & Saul Cornell, *Age Restrictions and the Right to Keep and Bear Arms*, *1791-1868*, 108 MINN. L. REV. 3049 (2024) ............... 5

Michael Dreyfuss et al., *Teens Impulsively React Rather Than Retreat from Threat*, 36 DEVELOPMENTAL NEUROSCIENCE 220 (2014) ............. 9

Michael Levenson, *What We Know About the Assassination Attempt Against Trump*, N.Y. TIMES (July 30, 2024) ...................................... 12

RAND Corp., *The Effects of Minimum Age Requirements* (last updated July 16, 2024) ....................................................................... 13

Sarah R. Lowe & Sandro Galea, *The Mental Health Consequences of Mass Shootings*, 18 TRAUMA, VIOLENCE, & ABUSE 62 (2017) ............. 11

U.S. Census Bureau, *Annual Estimates of the Resident Population by Single Year of Age and Sex: April 1, 2010 to July 1, 2019*, National Population by Characteristics: 2010–2019 (last visited Aug. 6, 2024) ................................................................................................... 10

U.S. Dep't of Justice, *Crime in the United States*, Arrests by Age, 2019, tbl.38 (last visited Aug. 6, 2024)................................................ 10

William Baude & Robert Leider, *The General Law Right to Bear Arms*, 99 NOTRE DAME L. REV. (forthcoming 2024) ............................. 7

Appellate Case: 23-2248     Page: 8     Date Filed: 08/09/2024 Entry ID: 5423112

## INTEREST OF *AMICI CURIAE*[1]

Amici are three non-profit organizations dedicated to ending gun violence in the United States. Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence each have decades of experience supporting laws and strategies to end gun violence in the United States. March For Our Lives, formed in 2018 after the Parkland, Florida high school shooting, is a non-profit organization comprised of young Americans advocating for sensible laws that prevent gun violence. Amici have an interest in ensuring that the United States Constitution is interpreted correctly to allow the nation's democratically accountable officials to pass common-sense legislation that prevents gun violence.

## INTRODUCTION

Amici urge this Court to grant Minnesota's petition for panel or en banc rehearing. The Court should do so because, in invalidating Minnesota's modest restriction on 18-to-20-year-olds carrying handguns in public (the "Minnesota Law"), the panel took an overly narrow

---

[1] Defendant-Appellant and Plaintiffs-Appellees have consented to *amici*'s filing. *See* Fed. R. App. P. 29(a)(2). No counsel for a party authored this brief in whole or in part or funded the preparation or submission of this brief, and no person other than *amici* or their counsel made such a monetary contribution. *See* Fed. R. App. P. 29(a)(4)(E)

approach to Second Amendment jurisprudence that directly conflicts with the Supreme Court's recent reasoning in *United States* v. *Rahimi*, 144 S. Ct. 1889 (2024). The panel demanded a near-exact, pre-1791 historical match to the Minnesota Law, even though the Supreme Court just two months ago rejected that standard. This error warrants rehearing because it poses a grave threat to public safety, not just with respect to the Minnesota Law, but also because it could mistakenly upend a wide swath of life-saving, fully constitutional gun laws. The panel's mistaken application of Supreme Court precedent and the exceptional importance of the questions at issue warrant rehearing. Fed. R. App. P. 35(b)(1), 40(a)(2).

## REASONS FOR GRANTING REHEARING

### I. The Panel's Decision Conflicts with Binding Precedent and Undermines Lawmakers' Ability to Enact Laws That Prevent Gun Violence Consistently with the Constitution.

In *Rahimi*, the Supreme Court issued a critical clarification of how to apply the Second Amendment. The Court rejected the overly narrow historical tests that some lower courts had applied in the wake of *New York State Rifle & Pistol Ass'n* v. *Bruen*, 597 U.S. 1 (2023). As the Court explained, "the Second Amendment permits more than just those

regulations identical to ones that could be found in 1791." *Rahimi*, <u>144 S. Ct. at 1897-98</u>; *see id.* at 1897 (*Heller* and *Bruen* "were not meant to suggest a law trapped in amber"). "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with *the principles* that underpin our regulatory tradition." *Id.* at 1898 (emphasis added).

Instead of faithfully applying the Supreme Court's recent direction, the panel continued down the overly narrow path that *Rahimi* rejected. The panel's analysis rests on two fundamental errors.

First, the panel failed to conduct an analysis of whether the Minnesota Law "comport[s] with the principles underlying the Second Amendment," as *Rahimi* directs. *Id.* Indeed, the panel did not identify any principles that may be relevant to the Minnesota Law. Instead, the panel looked for a *precise* historical analogue and wrongly rejected each of the analogous historical laws that Minnesota identified (Panel Op. 21-22), despite the Supreme Court's warning against such searches for "a 'dead ringer' or a 'historical twin,'" *Rahimi*, <u>144 S. Ct. at 1898</u>; *see also id.* at 1925 ("imposing a test that demands overly specific analogues has serious problems" (Barrett, J., concurring)).

In doing so, the panel ignored several historical principles that support upholding the Minnesota Law, which merely places a limited restriction (both in time and space) on a cohort of people who present heightened risks of violence when armed, due in part to a scientifically recognized lack of impulse control. *See infra* Section II. The Minnesota Law is consistent with a historical tradition of 18-to-20-year-olds having fewer rights than older adults and of regulating persons who are deemed particularly dangerous when armed. As this Court recently explained, "[h]istory shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people" including "those who are deemed more dangerous than a typical . . . citizen." *United States* v. *Jackson*, 69 F.4th 495, 502 (8th Cir. 2023)[2]; *see Rahimi*, 144 S. Ct. at 1898 (noting "ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others"). Indeed, lawmakers' historical "discretion to prohibit possession of firearms by a

---

[2] After *Rahimi*, the Supreme Court granted certiorari and vacated the judgment in *Jackson* for consideration in light of *Rahimi*. 2024 WL 3259675 (U.S. July 2, 2024).

-4-

category of persons . . . who pose an unacceptable risk of dangerousness may allow greater regulation than would an approach that employs means-end scrutiny." *Jackson*, <u>69 F.4th at 505</u>. Had the panel considered the principles elucidated by history, it should have recognized that "historical and modern laws have the same 'why': concerns about public safety resulting from minors' impulsivity and their improper usage of firearms." Megan Walsh & Saul Cornell, *Age Restrictions and the Right to Keep and Bear Arms*, *1791-1868*, 108 MINN. L. REV. 3049, 3108 (2024).

Second, the panel incorrectly held that only statutes from 1791, when the Second Amendment was ratified, are relevant here. In questioning whether "Reconstruction-era sources have much weight" (Panel Op. 24), the panel disregarded the Supreme Court's instruction that evidence of the "public understanding of [the Second Amendment's] text in the period after its enactment or ratification" is probative of its meaning. *District of Columbia* v. *Heller*, <u>554 U.S. 570, 605</u> (2008). Indeed, in *Bruen* the Court itself gave detailed consideration to numerous 19th-century statutes. *See* <u>597 U.S. at 35-36</u>, <u>52-57</u>.

Appellate Case: 23-2248     Page: 13     Date Filed: 08/09/2024 Entry ID: 5423112

Left uncorrected, these two errors could lead to the invalidation of existing statutes and cause serious public safety problems; they could improperly undermine wide swaths of constitutionally valid gun violence prevention laws. As Defendant-Appellant points out, 30 states and the District of Columbia have regulations similar to the Minnesota Law. (Pet. Br. 1 & n.1.)

Moreover, the panel's reasoning here would generate substantial questions about even regulations found by the Supreme Court in *Heller* to be "presumptively lawful," 554 U.S. at 626-27 & n.26, which generally post-date the Second Amendment's ratification. As one court explained in the context of gun restrictions regarding the mentally ill—one of *Heller*'s presumptively lawful examples—even if "a formal regulation prohibiting the possession of firearms by the *mentally ill* did not exist at the time the Second Amendment was enacted," the principles underlying the Second Amendment permit such restrictions. *United States* v. *Gould*, 672 F. Supp. 3d 167, 182-83 (S.D. W. Va. 2023); *see United States* v. *Daniels*, 77 F.4th 337, 349 (5th Cir. 2023) (noting a lack of "positive-law statutes concerning mental illness and firearms" at the founding). Yet the panel's logic would seem to compel the conclusion that

the lack of prohibitions at the time of the Second Amendment's ratification is dispositive

The panel's short-sighted search for precisely analogous pre-1791 regulations could also impose an unworkable test on modern "sensitive place" regulations.  As the Supreme Court made clear in *Bruen*, strict analogical reasoning is the wrong approach to these restrictions: "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited." <u>597 U.S. at 30</u>.  "The constitutional validity of a prohibition on carrying arms aboard aircraft does not turn on whether the eighteenth and nineteenth centuries had analogous regulations of ships and railcars.  The search should instead be for the legal principles that govern sensitive places." William Baude & Robert Leider, *The General Law Right to Bear Arms*, 99 Notre Dame L. Rev. (forthcoming 2024), https://perma.cc/PD2G-TKCA.[3]

---

[3] Lower courts have mistakenly assessed the constitutionality of sensitive place restrictions with a quixotic search for historical laws prohibiting guns in zoos, casinos, and sports arenas.  *See, e.g.*, *Koons* v. *Platkin*, <u>673 F. Supp. 3d 515, 594-98</u> (D.N.J. 2023); *Kipke* v. *Moore*, <u>695 F. Supp. 3d 638, 652-58</u> (D. Md. 2023).

Appellate Case: 23-2248     Page: 15     Date Filed: 08/09/2024 Entry ID: 5423112

Taken at face value, the panel's decision could force legislators to select gun regulations from a static menu of precise analogues to laws that existed in 1791, thus rejecting the core of *Rahimi*'s holding, and the "nuanced approach" that accounts for laws addressing "unprecedented societal concerns or dramatic technological changes." *Bruen*, <u>597 U.S. at 27</u>. This could stymie legislative efforts to pass life-saving constitutional legislation. Rehearing is needed to acknowledge that the appropriate inquiry entails analyzing "why and how" a law affects the ability to bear arms and comparing that "why and how" to historical "principles," not searching for circa-1791 twins. *Rahimi*, <u>144 S. Ct. at 1898</u>. Only this more flexible approach can appropriately apply "the balance struck by the founding generation to modern circumstances." *Id.* (quoting *Bruen*, <u>597 U.S. at 29</u> n.7).

## II. The Minnesota Law Fits Within the Historical Tradition of Regulating Groups Posing a Heightened Risk of Violence When Armed.

The Minnesota Legislature's decision to enact restrictions on 18-to-20-year-olds' ability to carry handguns in public is consistent with the nation's history of regulating persons who present a heightened

Appellate Case: 23-2248    Page: 16    Date Filed: 08/09/2024 Entry ID: 5423112

danger to the public when armed.[4]  The panel wrongly overrode the Minnesota legislature's judgment that there was sufficient evidence that 18-to-20-year-olds pose a danger to the public when armed.  (Panel Op. 19-20.)  Neuroscience and social science research confirms that 18-to-20-year-olds with easy access to firearms pose a substantial risk of danger to themselves and others, mirroring the justification for long-standing regulations of other highly dangerous cohorts.  This evidence reinforces the Minnesota Law's constitutionality and demonstrates this case's remarkable stakes.

As the Supreme Court has recognized, the human brain does not finish developing until the mid-to-late twenties.  *See Graham* v. *Florida*, 560 U.S. 48, 68 (2010); *Gall* v. *United States*, 552 U.S. 38, 58 (2007).  The last part of the brain to mature is the prefrontal cortex, which is responsible for impulse control, judgment, and long-range

---

[4] As Defendant-Appellant explains, there is a longstanding tradition of age-based restrictions on 18-to-20-year-old's use of firearms in public. (Pet. Br. 8-12.)  *Amici* submit this brief to provide additional context regarding how that history fits within the broader tradition of regulating dangerous groups' access to firearms.

Appellate Case: 23-2248     Page: 17     Date Filed: 08/09/2024 Entry ID: 5423112

planning.[5]    Because of 18-to-20-year-olds' alarming, well-documented impulsivity, they pose a heightened risk of dangerousness when armed.[6] As Minnesota's expert reported, this age group "has long been recognized as the most likely to use firearms to commit homicides and other violent crimes." (App. 116; R. Doc. 50-1, at 14.)  For example, "in 2019, the single most homicidal age group in the nation was age 19, with both 18- and 20-year-olds having higher murder arrest rates than any other age groups except for age 19." (App. 114; R. Doc. 50-1, at 12.)

National data also shows dramatically higher rates of violent crime in this age cohort:

- Arrests for homicide, rape, and robbery are higher among 18-to-20-year-olds than older adults.[7]

_____

[5] *See* Mariam Arain et al., *Maturation of the Adolescent Brain*, 9 NEUROPSYCHIATRIC DISEASE & TREATMENT 449, 453, 456 (2013).

[6] *See, e.g.*, Michael Dreyfuss et al., *Teens Impulsively React Rather Than Retreat from Threat*, 36 DEVELOPMENTAL NEUROSCIENCE 220, 220 (2014) ("Adolescents['] . . . proclivity toward . . . risk taking has been suggested to underlie the inflection in criminal activity observed during this time.").

[7] U.S. Dep't of Justice, *Crime in the United States*, Arrests by Age, 2019, tbl.38 (last visited Aug. 6, 2024), https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/tables/table-38.

Appellate Case: 23-2248    Page: 18    Date Filed: 08/09/2024 Entry ID: 5423112

- Though 18-to-20-year-olds make up less than 5% of the U.S. population, they account for more than 15% of homicide and manslaughter arrests.[8]

- 18-to-20-year-olds account for more than 12% of property crime arrests.[9]

The following chart, showing homicide offense rate by age in 2009, illustrates the disproportionate share of homicides committed by 18 to 20-year-olds:[10]



---

[8] *Id.*; U.S. Census Bureau, *Annual Estimates of the Resident Population by Single Year of Age and Sex: April 1, 2010 to July 1, 2019*, National Population by Characteristics: 2010–2019 (last visited Aug. 6, 2024), https://www.census.gov/data/datasets/time-seriesdemo/popest/2010s-national-detail.html.

[9] *Crime in the United States*, *supra* note 7.

[10] Daniel W. Webster et al., *The Case for Gun Policy Reforms in America*, JOHNS HOPKINS CTR. FOR GUN POL'Y & RSCH. 1, 5 (2012).

Appellate Case: 23-2248    Page: 19    Date Filed: 08/09/2024 Entry ID: 5423112

Eighteen-to-twenty-year-olds are also uniquely likely to commit mass shootings, which traumatize whole communities and have an outsized impact on perceptions of public safety.[11] Experts have noted a "very big cluster of young people" among mass shooting perpetrators.[12] Many recent mass shootings involve 18-to-20-year-old perpetrators. On May 14, 2022, an 18-year-old killed ten people and wounded three others at a supermarket in Buffalo, New York.[13] Just 10 days later, an 18-year-old killed 19 children and two teachers at an elementary school in Uvalde, Texas.[14] In April 2023, a 19-year-old and two 20-year-olds were charged in a mass shooting at a "Sweet 16" party in Dadeville, Alabama that killed four people and injured 32 others.[15] Even more recently, on

---

[11] Sarah R. Lowe & Sandro Galea, *The Mental Health Consequences of Mass Shootings*, 18 TRAUMA, VIOLENCE, & ABUSE 62, 79 (2017).

[12] Glenn Thrush & Matt Richtel, *A Disturbing New Pattern in Mass Shootings: Young Assailants*, N.Y. TIMES (June 2, 2022), https://www.nytimes.com/2022/06/02/us/politics/mass-shootings-young-men-guns.html.

[13] *A Partial List of Mass Shootings in the United States in 2022*, N.Y. TIMES (Jan. 24, 2023), https://www.nytimes.com/article/mass-shootings-2022.html.

[14] *Id.*

[15] Isabel Rosales et al., *6 People Face Murder Charges for the Sweet 16 Party Massacre That Left 4 Dead and 32 Injured*, CNN (Apr. 21, 2023),

Appellate Case: 23-2248     Page: 20     Date Filed: 08/09/2024 Entry ID: 5423112

July 13, 2024, a 20-year-old fired multiple shots at former-President Trump during a rally in Butler, Pennsylvania, wounding him, killing one spectator, and critically wounding two others.[16]

Access to guns among this age cohort also exacerbates suicide risk. Eighteen-to-twenty-year-olds are more likely than older adults to develop and act upon suicidal impulses. Many major psychiatric conditions first develop in adolescence,[17] and, in the past decade, suicide was the third most common cause of death among 18-to-20-year-olds.[18] Their impulsivity and propensity toward negative emotional states puts them at particular risk of suicide, which "is commonly an impulsive act

_____

https://www.cnn.com/2023/04/19/us/dadeville-alabama-birthday-party-shooting-wednesday/index.html.

[16] Michael Levenson, *What We Know About the Assassination Attempt Against Trump*, N.Y. TIMES (July 30, 2024), https://www.nytimes.com/article/shooting-trump-rally.html.

[17] Jay N. Giedd et al., *Why Do Many Psychiatric Disorders Emerge During Adolescence?*, 9 NATURE REVS. NEUROSCIENCE 947, 952 (2008).

[18] Centers for Disease Control and Prevention, Web-based Injury Statistics Query and Reporting System (WISQARS), *Leading Cause of Death Reports, 1981–2020* (last visited Aug. 6, 2024), https://webappa.cdc.gov/sasweb/ncipc/leadcause.html.

Appellate Case: 23-2248    Page: 21    Date Filed: 08/09/2024 Entry ID: 5423112

by a vulnerable individual."[19]  These impulsive acts are particularly deadly when mixed with easy access to firearms.  In 2021, more than half of the 2,735 suicide deaths among U.S. 16-to-21-year-olds involved firearms.[20]  Suicide by firearm has the highest fatality rate of any method—while 4% of non-firearm suicide attempts are fatal, 85% of suicide attempts with a gun are fatal.[21]  Laws regulating this cohort's access to guns can prevent many of those tragic deaths.

## CONCLUSION

The panel's decision ignored the principles underlying the nation's history and tradition of regulating access to guns for 18-to-20-year-olds and persons deemed particularly dangerous when armed.  In doing so, it adopted an overly stringent analysis that cannot be squared with *Rahimi*.  The decision threatens to upend numerous other

---

[19] E. Michael Lewiecki & Sara A. Miller, *Suicide, Guns, and Public Policy*, 103 AM. J. PUB. HEALTH 27, 27 (2013).

[20] RAND Corp., *The Effects of Minimum Age Requirements* (last updated July 16, 2024), https://www.rand.org/research/gun-policy/analysis/minimum-age.html.

[21] Matthew Miller et al., *Suicide Mortality in the United States*, 33 ANN. REV. PUB. HEALTH 393, 397 (2012).

Appellate Case: 23-2248     Page: 22     Date Filed: 08/09/2024 Entry ID: 5423112

constitutional gun regulations. Panel or *en banc* rehearing is thus plainly warranted here.

Dated: August 6, 2024

Respectfully submitted,

*Of Counsel for* Amicus Curiae *Giffords Law Center to Prevent Gun Violence:*

Esther Sanchez-Gomez
Kelly Percival
GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE
268 Bush St. # 555
San Francisco, CA 94104
(415) 433-2062
Robert A. Sacks
Leonid Traps
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

Elizabeth A. Rose
Beatriz L. Albornoz
Madeline B. Jenks
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Suite 700
Washington, DC 20006
(202) 956-7500

/s/ *Sophie A. Kivett*
Sophie A. Kivett
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-3243
kivetts@sullcrom.com

*Counsel of Record for Amici Curiae Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation*

*Of Counsel for* Amicus Curiae *Brady Center to Prevent Gun Violence:*

Douglas N. Letter
Shira Lauren Feldman
BRADY CENTER TO PREVENT GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100

-15-

## CERTIFICATE OF SERVICE

I certify that on August 6, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Sophie A. Kivett
Sophie A. Kivett
*Counsel for* Amici Curiae
*Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation*

August 6, 2024

Appellate Case: 23-2248    Page: 24    Date Filed: 08/09/2024 Entry ID: 5423112

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of <u>Federal Rule of Appellate Procedure 29(b)(4)</u> because this brief contains 2,592 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. This brief complies with Eighth Circuit Rule 28A(h)(2) because it has been scanned for viruses and is virus-free.

*/s/ Sophie A. Kivett*
Sophie A. Kivett

*Counsel for* Amici Curiae
*Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence, and March For Our Lives Foundation*

August 6, 2024

Appellate Case: 23-2248    Page: 25    Date Filed: 08/09/2024 Entry ID: 5423112